UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-61385-CIV-DMM-MIDDLEBROOKS/JOHNSON

YACHT VENTURES, LTD.,

    Plaintiff,

vs.

GLOBAL MARINE GROUP, LLC,
a Florida limited liability company, and
ARB MARINE GROUP, INC., a Delaware
corporation,

    Defendants.

## ORDER

THIS CAUSE comes before the Court upon the Plaintiff's Motion for Partial Summary Judgment (DE 18) and the Defendant, ARB's, Supplemental Motion for Summary Judgment (DE 70). The Court has reviewed the Motions, the responses thereto, and is otherwise fully informed of the premises.

## FACTUAL BACKGROUND

This action involves a dispute over the construction and purchase of a luxury motor yacht. Specifically, the filings reveal that in June of 2005 Plaintiff, Yacht Ventures ("YV") contracted with Defendant Global Marine Group, LLC ("Global") for the construction of a luxury yacht. The yacht was to be constructed by an Italian shipbuilder, Baia, ("Builder") under a separate contract between Global and Baia. Baia is not a party to this action. The construction was to take approximately one year, and the purchase price of the yacht was $3,900,000.00. As part of the Agreement between the YV and Global, Defendant, ARB, acted as a guarantor of Global's

ability to perform its financial duties under the Agreement, by executing a "Guaranty" which was made part of the Agreement between YV and Global.

As required under the Agreement, YV traded in another yacht and was credited $1,100,000 towards the purchase price.[1] Under the Agreement, YV then was required to pay ten percent (10%) of the remaining balance of $2,800,000.000, or $280,000 to Global. It is undisputed that YV paid this amount. Accordingly, upon completion of the new yacht construction, YV would presumably have been required to pay approximately $2,520,000 to Global.

The Agreement provided, in summary, that in the event that YV failed to make any payment when due, or failed to accept delivery and make final payment, that Global could terminate the contract. Specifically, the Agreement provided, in pertinent part, that

> 12.1 [Global] may cause Builder to suspend construction of the Yacht and/or terminated this Agreement, at any time prior to delivery of the Yacht, by Notice to Buyer:
>
> (a) If Buyer fails to pay any sum due and owing under this Agreement within ten (10) business days after the date Seller properly notified Buyer that the sum is due;
>
> \*\*\*
>
> 12.2 *Upon proper termination of this Agreement by [Global], it will be entitled as its sole remedy to retain out of the amounts paid by [YV] an amount equal to ten (10%) of the Purchase Price, by way of liquidated damages as compensation for its estimate losses, and promptly shall return to [YV] all other cash paid and the proceeds actually received by [Global] from the sale of the Trade Vessel. . . .*

(emphasis added).

---

[1] It appears that YV transferred title to Global and that Global was authorized to sell the yacht. The amount credited to YV ($1,100,000) does not appear to be, and is not alleged to be, reduced in any way by the purchase price actually received by Global.

Accordingly, under the terms of the Agreement, in the face of a "proper termination," then Global would be entitled to retain $390,000.00 as liquidated damages and YV would be entitled to a refund of any monies paid to Global in excess of the $390,000 figure. This is what is at issue in this case.

YV does not dispute that it breached its Agreement with Global, and that, therefore, Global was entitled to retain $390,000.00 of the monies YV paid as liquidated damages. YV, in this action, seeks reimbursement of the funds that it paid to Global which exceed this $390,000.00 figure. YV estimates this figure to be approximately $510,000 consisting of $620,000 in proceeds from the sale of its trade-in vessel, plus the $280,000.00 cash deposit paid to Global, minus the $390,000.00 figure. YV also seeks attorney's fees and costs.

Essentially then, this is an action to recover a refund of amounts paid in excess of an agreed amount of liquidated damages. While this would seem to be a simple issue, it is not. Specifically, I note the following procedural anomalies: (1) the monies due YV under the contract presented would be monies paid to Global; (2) although named as a Defendant in this action, the docket does not reflect that the YV ever served Global with the Summons and Complaint; (3) Defendant ARB cross-claimed against Defendant Global and properly served Global, but Global has failed to appear or otherwise defend, and a Default was accordingly entered. Accordingly, YV is proceeding against ARB pursuant to the contractual guaranty mentioned above, which reads, in pertinent part, as follows:

> By signing this Agreement, ARB Marine Group, Inc., ("Guarantor) acknowledges and agrees that it hereby unconditionally and irrevocably guarantees to Buyer punctual and full payment by Seller *of all amounts payable by Seller under this Agreement. Guarantor is liable hereunder as a direct obligor and Buyer may enforce this Guaranty without first pursuing Seller or exhausting*

> *any other remedies.*
>
> ***
>
> The Guarantor shall pay all reasonable attorney's fees, court costs
> and expenses incurred by Buyer in the enforcement or collection of
> this Guaranty provided that Buyer is determined to be the
> prevailing party . . . .

Agreement (emphasis added).

What occurred after the commencement of the yacht construction is unclear. According to YV, Global terminated the agreement on or about February 2, 2007. According to ARB, however, YV, anticipatorily breached the contract by not obtaining financing and by deciding not to complete the purchase of the yacht, and so, because YV abandoned the Agreement, ARB claims it is relieved of its guaranty obligation. As Global has completely failed to appear or otherwise defend, there is no indication of its perspective of the occurrences subsequent to the execution of the Agreement.[2]

## YV'S MOTION FOR PARTIAL SUMMARY JUDGMENT

YV asserts in its motion that it is undisputed that it paid Global in an amount in excess of the $390,000 that Global is entitled to as liquidated damages for YV's breach of contract claim, and that, therefore, it is entitled, as a matter of law, to a full refund of $510,000, the amount that YV paid to Global which exceeds the $390,000 liquidated damages figure. Additionally, it asserts that pursuant to the Guaranty, ARB, because it "irrevocably guarantee[d] to Buyer punctual and full payment by Seller of all amounts payable by Seller under th[e] Agreement" and because ARB agreed to be liable as a direct obligor and to allow YV to enforce the Guaranty

---

[2] Gerald Berton, the Global's President, was ultimately deposed. However, only selected segments of his deposition have been submitted for the Court's review in conjunction with the instant Motions.

"without first pursuing Seller or exhausting any other remedies," is liable for payment of this reimbursement amount to YV.  YV asserts that the plain language of the liquidated damages and guaranty provisions speak for themselves and that they are entitled to reimbursement of all funds paid to Global in excess of the liquidated damages amount as a matter of law.

## ARB'S CROSS MOTION

ARB, rather than respond to YV's Motion, filed several requests for extensions of time, claiming that Global's absence had impeded its ability to adequately respond to YV's Motion.[3] Specifically, ARB requested more time to conduct discovery so as to permit it time to establish that YV had anticipatorily breached the contract prior to Global's termination of the contract, and that such anticipatory breach nullified ARB's Guaranty obligation under the Agreement.  The Court, after a hearing, allowed ARB the additional time that it requested, and it has since filed a Supplemental Motion for Summary Judgment in which it asserts that: (1) the Guaranty was strictly intended to guaranty that Global would pay the Builder for construction of the Yacht which was the subject of the Agreement – not any refund of monies due to YV by Global; and (2) YV's anticipatory repudiation of the contract rendered the contract null and void and extinguished ARB's guaranty obligations.

Legal Standard

Summary judgment is appropriate only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of meeting this exacting standard.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  In applying this standard, the evidence, and all reasonable factual inferences drawn therefrom, must be viewed in

---

[3] See DE 21; DE 29; and DE 34.

the light most favorable to the non-moving party. *See Arrington v. Cobb County*, 139 F.3d 865, 871 (11th Cir. 1998); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The non-moving party, however, bears the burden of coming forward with evidence of each essential element of their claims, such that a reasonable jury could find in their favor. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). The non-moving party "[m]ay not rest upon the mere allegations and denials of [its] pleadings, but [its] response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Further, conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment. *See Earley*, 907 F.2d at 1081. The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *See Celotex*, 477 U.S. at 322.

If the record presents factual issues, the Court must not decide them; it must deny the motion and proceed to trial. *See Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *See Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir. 1969). If reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment. *See Impossible Electronic Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982); *see also Anderson Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986)("[T]he dispute about a material fact is genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the non-moving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *See Adickes*, 398 U.S. at 160. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *See Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611-12 (5th Cir. 1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *See Anderson*, 477 U.S. at 255. It is from this point that we begin our analysis.

The following additional principles guide my analysis:

1. Absent an ambiguity, a contract's specific terms will be enforced;*Bivens v. Gardens Office Bldg., Inc., et al.*, 140 F.3d 898, 905 (11th Cir. 1998);

2. Whether an ambiguity exists is a question of law for the Court. *Id.*

3. "A latent ambiguity arises when a contract on its face appears clear and unambiguous, but fails to specify the rights or duties of the parties in certain situations." *Wheeler v. Wheeler, et al.,* 964 So. 2d 745, 749 (Fla. 1st DCA 2007)(quoting *Jenkins v. Exckerd Corp.*, 913 So. 2d 43, 52-53 (Fla. 1st DCA 2005));

4. If an ambiguity exists then parole evidence is admissible to establish the parties intent, and absent clear and unequivocal parole evidence, that question is one for the jury. Land O'Sun Realty, Ltd. v. REWJB Gas Invst. 685 So. 2d 870, 8782 (Fla. 3rd DCA 1996).

      5.      Under the Uniform Commercial Code, there are times when "extrinsic evidence is admissible to establish the parties course of dealing" or "useage of trade" or "course of performance" and such extrinsic evidence may be used to supplement the writing. *Allapath Services, Inc. v. Exxon Grp.*, 333 F.3d 1248, 1261 (11th Cir. 2003); UCC § 2-202(a);

YV asserts that the termination and guaranty provisions discussed above are clear and unambiguous as a matter of law, and that, Global's termination under the Agreement was "proper", and that therefore, ARB must pay the amount of money that Global received in excess of the liquidated damages amount. ARB asserts in its Motion that the termination provision has a latent ambiguity as it did not "specify the rights and duties of the parties" under the Agreement under the circumstances which occurred in this case. Additionally, ARB asserts that YV abandoned the Agreement when it indicated that it did not intend to accept delivery of the Yacht, and that such Abandonment was accepted by Global rendering the Agreement void, and that, therefore, ARB is relieved of any duty to perform under the void Agreement. I find that issues of material fact preclude a finding that the termination was "proper" as contemplated by the Agreement.

"The abandonment of a contract may be effected by the acts of one of the parties thereto where (1) the acts of that party are inconsistent with the existence of the contract and (2) are acquiesced in by the other party." *Dean Witter Reynolds, Inc. v. Fleury*, 138 F.3d 1339, 1342 (11th Cir. 1998) (citing *McMullen v. McMullen*, 185 So. 2d 191, 193 (Fla. 2d DCA 1966)). The decision to abandon the contract must be mutual, relieving both parties of their obligations. *City of Del Rio v. Ulen Contracting Corp.*, 94 F.2d 701, 704 (5th Cir. 1938). Where time is

considered of the essence, the contract will be deemed abandoned by mutual consent if it is not carried into effect within a reasonable time period by the parties. *Southern Life Ins. & Trust Co. v. Cole*, 4 Fla. 359 (1852).

Under Florida contract law, the question of what constitutes a reasonable time is generally a question of fact. *U.S. v. David Boland, Inc.*, 2006 WL 2683304 (M.D. Fla. 2006); *see also Cocoa Properties, Inc. v. Commonwealth Land Title Ins. Co.*, 590 So. 2d 989, 991 (Fla. 2d DCA 1991) (stating that the question of what constitutes a reasonable time creates a genuine issue of material fact).

"[A] guaranty is an undertaking by a guarantor to answer for payment of some debt, or performance of some contract, of another person in the event of default." 38 Am. Jur. 2d *Guaranty* § 1 (2008). The guaranty and the underlying contract are distinct instruments; however, the guaranty is a collateral agreement which can only be triggered by the default of the primary obligor. *In re Southern Cinemas, Inc.*, 256 B.R. 520, 527 (M.D. Fla. Bankr. 2000). Once the underlying obligation ceases to exist, so too does the obligation of the guarantor. *Id.*

It is ARB's contention that the alleged repudiation letter (DE 29-4) sent by YV to Global, coupled with Global's belief that the deal was "dead", constituted a mutual abandonment of the contract and thus an abandonment of the guaranty. Thus, as ARB argues, YV has no claim for any of the obligations under Paragraph 12.2 of the Purchase Contract. This Court respectfully disagrees with ARB. To begin with, the alleged repudiation letter, dated April 19, 2006, is not addressed to Global Marine Group or ARB; rather, it was sent to Carol Waxler of The Allied Marine Group. Furthermore, the letter specifically states that "Yacht Ventures Ltd. does not *wish* to take delivery of its new Baia . . . [and it] might consider taking delivery of the [Baia] next summer." (emphasis added). The Fifth Circuit has interpreted the word "wish" in this context to

not equate to a rescission by abandonment. *City of Del Rio v. Ulen Contracting Corp.*, 94 F.2d 701, 704 (5th Cir. 1938). Even more revealing is YV's willingness to simply delay delivery for one year, which this Court does not find to be an act patently inconsistent with the existence of a contract.

The April 19, 2006 letter also stated that time was of the essence. Even if this Court were to treat this letter as an offer to rescind, the decision needed to be mutual. *See City of Del Rio*, 94 F.2d at 704. I find, then, that a question of fact exists as to whether Global was afforded a reasonable time to carry, or attempt to carry, the contract into effect by enforcing its provisions (i.e. the terms under Paragraph 12). As ARB stated in its Motion, Florida law dictates that "the obligation of the guarantor rises and falls with the underlying obligation." *See In re Southern*, 256 B.R. at 527. Questions of fact exist as to whether Yacht Ventures abandoned the contract and whether Global acquiesced in that alleged abandonment. Thus it is likewise unclear whether ARB, as guarantor, was still responsible for the payments of Global to Yacht Ventures under the Agreement.

I note that the record contains evidence from both sides indicating that the deal was going bad, but that none of such evidence conclusively establishes who terminated the contract, or when or if the contract was ever terminated. Accordingly, it is impossible to determine whether the termination was "proper" under the Agreement, or whether the termination was of a type not contemplated by the Agreement at all.

Further, there is insufficient evidence in the record to allow a determination of whether the Agreement was abandoned and/or mutually rescinded, thereby relieving ARB of its guaranty obligations under the Agreement. It is clear, however, that when the Builder ultimately sold the Yacht to a different purchaser, the Agreement clearly became impossible to carry out. If in fact

the Agreement was not abandoned, but was instead modified, then questions of fact exist as to the effect of such modifications on the enforceability of the Guaranty.  Lastly, I note that there is evidence indicating that YV may have eventually completed a purchase of a different yacht from Global or a related party.  *See* Deposition of Gerald Berton, pp. 34 - 41.  However, the record does not conclusively establish that such purchase was carried out, or whether or not it was the result of a modification of the Agreement.  Additionally, the record has no evidence of whether YV, in any subsequent yacht purchase, if there was any, was given any type of credit for the equity that it had in the original Agreement.

I find that given the conflicting evidence relating to the course of events related to the Agreement that summary judgment is inappropriate.  Accordingly, it is

ORDERED and ADJUDGED that the Defendant's Motions be and are hereby DENIED.

DONE and ORDERED in Chambers, at West Palm Beach, Florida this 30th day of July, 2008.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE